The questions presented this morning are, first, whether accounting negligence is to be treated differently from all other forms or fashions of professional negligence, and, most specifically, whether the accounting statute of limitations is to be construed and applied differently from every other statute of limitations. The circuit court's holding in this case is to the effect that both of those questions are answered yes. And the defendant accountants in this case have argued explicitly, but without authority or principled rationale, that both of those questions must be answered in the affirmative. Your Honors, no case has held that such differences prevail. All case authority confirms a consistent approach to the elements of professional negligence and the accrual of claims of professional negligence, and to the activation and running of the applicable statutes of limitations. The elements of professional negligence are well-established and are cited in numerous cases. First of all, professional relationship giving rise to a duty of care, a breach of that duty of care, causation, and damages. All of them. Yes, sir. It comes up in every single statute of limitations case, and having been a criminal practitioner or in civil life, I've never understood, literally never understood, why it is that you would file inaction two days or so within the end of the two-year period. Was there some theory behind this that we wanted to wait until the last week? Because as you know, you argue that it's a new defense raised that we should run it from at least the time the check is written, because that brings it two days before the term runs. Why is that? Why not file it when you know what's going on? Your Honor, I'm glad you asked that question. The reasons are not of record in the case. I want to make that clear. But the fact is that from the time this tax assessment was paid by these plaintiffs until right up until the time this case was filed, the plaintiffs were in negotiations with the accountant's insurers. Indeed, Federated retained or continued to retain this accounting firm beyond the time this case was filed. There was a tremendous desire to try to preserve this relationship, which was not a new professional relationship, but went back many years, to try to preserve that, to try to resolve this without resort to a public proceeding. I can assure the other side that we're not going to talk about that. We're not going to find that it's okay, because I know in negotiations, it's not in the briefs. It's not one of the theories. But this happens all the time, and I really don't get it. I still don't get it. If you're dealing with the insurer and he's saying, oh, I'm thinking of paying you, well, you know, when I get down to that, I'm not waiting for the two days. You know, after about a year of begging, that's what we have courts in Cook County will go file. We did have assurances that a substantial offer would be forthcoming. Okay. It was never made. Right. And there was a desire to try to preserve the relationship without resorting to public proceeding. Okay. And again, that won't be held against the other side. But go ahead. Re-argue. Your Honors, all the elements of the claim of professional negligence must be present for a claim to accrue, for it to mature. A claim cannot be brought, or if it is brought, it's subject to dismissal, if all elements are not present. And then that, of course, includes the element of injury or damages. A statute of limitations begins to run when a person knows or reasonably should know of his injury, and also knows or reasonably should know that the injury was wrongfully caused. That's what this Court has held in the M.C. Baldwin case. That's what the Supreme Court held in the County of DuPage case. And in virtually every other case that is cited on statute of limitations in this case, and other cases as well, indicates that it is necessary for both elements to be present, both injury, knowledge of injury, and knowledge of wrongful causation. Now, the Circuit Court, referring to the particular statute of limitations in this case, relied on the absence of the mention in the statutory language of the word injury or the word damages. And from that, the Circuit Court reached the conclusion that the element of injury or damages was not necessary to activate the running of the statute of limitations. But all cases that have construed this statute of limitations and other comparable statutes of limitations have found that injury is an essential element to activate the statute of limitations. The cases include M.C. Baldwin. The cases include the Supreme Court's decision in County of DuPage, which construed not the accountant's statute of limitations, but a statute of limitations that, in the way it's written, is verbally almost identical to the accountant's statute of limitations. Can you address some of the out-of-state cases you cite towards the end of your brief, Feddersen et al.? Because there seems to be very little in Illinois, and yet there seems to be a great deal of law in other jurisdictions. Well, those cases, of course, relate to the question of accrual. When does a claim for professional malpractice connected with a tax matter accrue? When are all of the elements present? And Sahady and Feddersen, both of which are out of California, articulate the standard, which is entirely consistent with Federal law, that a claim does not accrue until there has been a determination by the tax court. It's the same as a judgment in the matter, in the underlying matter, or there's been a finalized settlement of the tax controversy. The case in Illinois that stands for the same proposition is the Bronstein case. Now, of course, the professional negligence that was involved there was attorney negligence, but the elements are the same. Bronstein says that, and indeed dismissed the case, where both parties, the plaintiff and the defendant, were aware of a breach of professional duty, or at least were aware that allegations of a breach of professional duty could be made. But the appellate court, acting sua sponte, found that the case had not accrued because the underlying tax case was still pending and dismissed the Bronstein complaint because it was premature. So those cases go to the accrual of a claim. So are you saying that when the notice of deficiency is issued, that's when the time begins? Not the notice of deficiency. It's the assessment of the deficiency. The notice of the deficiency is in the tax world, really the functional equivalent of a complaint or perhaps a demand letter, even pre-complaint. What is required for there to be certainty of injury is that that, is that the IRS's position be adjudicated or otherwise resolved with finality. Okay. So you're taking the better position in the California case when it's the same court? Yes. In California, and the California case, although really articulates a kind of bright line test, but that bright line, I think it has to be emphasized, is entirely consistent with how Federal law looks at such matters. That there is no finality, there is no determination of the tax assessment until the tax court rules, until there is a judgment, or until there is a settlement, until it's otherwise disposed of by agreement. And even the matter of settlement is not a question of whether people are talking about settlement, whether a proposal has been made about settlement. We say, in this case, that the matter could not have become final, and the claim could not have accrued before May 17th. It was May 17th that my client's payments were transmitted to the IRS. But indeed, it may not have been as early as May 17th that the cause of action accrued. Because Federal law and Federal regulations provide that a matter is not final until the IRS formally accepts the tender of payment. And that, again, this is not of record in this case, but that did not occur until several days after. We're not certain of the precise date. Several days after the settlement amount of the assessment was tendered to the IRS. Federal law is pretty clear about that. California noted that in determining what its bright line test would be. And the bright line that was adopted by the California courts is consistent with what this Court decided in Braunstein. There cannot be a claim, no claim accrues, until that underlying tax matter has been adjudicated. Now, Your Honors, the Circuit Court was aware of Braunstein and read Braunstein, but frankly, misunderstood what Braunstein was about. In the Court's memorandum on the motion for reconsideration, it's quite clear that, in fact, the Court explicitly said that Braunstein is an attorney malpractice case construing the attorney malpractice statute of limitations. There is nothing about statute of limitations in Braunstein whatsoever. The case does not and never did involve statute of limitations. What it involved was the question of when a claim for professional malpractice in the context of a tax dispute accrues. And on that point — But it came up in an attorney malpractice case, right? This wasn't a suit against the accountant's brazen. It was against his lawyer. That's exactly correct, Your Honor. But the elements of professional malpractice, as this Court and other courts in Illinois have held, are the same. There is no difference. The four elements are the same. A professional relationship. A breach of a duty arising within that relationship. Causation and damages. Those elements are the same, regardless of whether it's accountant malpractice, lawyer malpractice, or other kinds of malpractice. The language — admittedly, the language and the statutes of limitations are different. Not the elements of the claim. And as to the elements of the statutes of limitations, no court — no court on the appellate, Supreme Court level in this State have found the differences to be material. No court has said that you need not have accrual of a claim against an accountant before the statute of limitations begins to run. It would be inconsistent, we maintain, with every other decision to so hold. Now, a word about the Dancor case, which is an accountant malpractice case in which the statute of limitations was deemed to have run prior to the filing of the case. The accountant defendants here have relied greatly on Dancor. I must point out at the outset that Dancor recites that both elements — that is, injury and knowledge of causation — must be present for the statute of limitations to be activated. What Dancor went on to say is that the extent of damages need not be determined fully and finally for the statute of limitations to begin to run. And so the circuit court noted, and the accountant defendants have maintained throughout this case, that this is a case about knowing the extent of damages. But that's not so. The extent of damages, knowing whether you're in for a dime or in for a dollar, is not at all what this case is about. This case is about the certainty of injury. And Bronstein teaches us, federal law teaches us, the California cases teach us, that there is no injury until the underlying tax controversy has been finally adjudicated or otherwise finally resolved. The discovery rule, as the Court said in M.C. Baldwin, doesn't apply where there is no injury to discover. And this case presents circumstances where, although it was admittedly clear that there was a problem with my client's tax returns, and there was a problem with respect to the professional work that had been performed or not performed by these accountants, but whether that problem would mature into a claim, whether it would ripen into a claim, whether the injury resulting from that was not certain or ascertainable until the tax dispute had been finally resolved. That's what Bronstein teaches. That is what's consistent with federal law. Circuit Court, in this case, on the motion for reconsideration, misperceived the relevant authorities and misconstrued the statute of limitations. If this Court reads the cases for what they say and construes the statute as it has been construed in other accountant cases and in other similar cases, then the decision of the Circuit Court will be reversed and, as a matter, remanded for further proceedings. I'd like to reserve. We'll have some time for replying. Thank you. Ms. Tischer? Good morning again. Julie Tischer on behalf of the defendants. There's been very little talk about the language of the statute at issue here. Plaintiffs have avoided talking about that for obvious reasons. The statutory language that's involved here in 13214.2 is plain and unambiguous. And the law in Illinois, when you're dealing with the interpretation of a statute, is that the most reliable indicator of the legislator's intent is the language of the statute itself. And if that language is plain and clear, the statute should be given effect without resorting to other aides. Undisputed facts here. April of 2005, plaintiffs know that the IRS disagrees with the defendant's calculation of their passive investment income. December of 2005, plaintiffs unanimously consent to the proposal by the IRS to adjust their tax liability. All of the plaintiffs consented, as of December of 2005, to the adjustments proposed by the IRS. Now, that means they knew about them, they knew that it resulted from the passive income calculation rendered by the defendants, and they knew they were going to be injured. Those are undisputed facts. Federated writes a check to the United States Treasury, May 12, 2006, in the amount of approximately $140,000. Undisputed. That check was written to pay the tax on the passive income that was miscalculated. We rely on the Dancor case heavily because it's an opinion in this district that deals with the issue at hand. When does a cause of action accrue under the terms of the accounting malpractice statute of limitations? In that case, plaintiffs first filed a RICO action against employees that had embezzled from them and defrauded them, stolen from them. They filed that in October of 1990. They then waited until March of 1993 to file their action against their accountants for failing to detect the embezzlement. This district appellate court said it's unreasonable to say that they had enough information to file a 35-page RICO claim against the embezzlers and that they didn't know that their accountants had missed all of this information. And the plaintiffs in Dancor tried just the argument being made by plaintiff here. Plaintiffs in Dancor said, well, wait a minute, if you're going to bar a portion of our damages, you can't bar it all. We didn't know about $2 million worth of these damages in October of 1990. You can't bar that claim. And the appellate court said, that's not the test. And this is the language they used. It's clear that the knowledge that Dancor possessed on October 10th of 1990 was sufficient to put it on notice of the defendant's possible invasion of plaintiff's legally protected rights. The mere fact that the extent of the injury is not immediately known or ascertainable does not postpone the triggering of the statute of limitations. The appellate court in this district has said the damages don't even have to be ascertainable for the statute of limitations to be triggered. But in Dancor they certainly knew the extent of the damages by 1990 when they filed their RICO action, right? Because they had part of their complaint, the 35-count complaint, but then here's how we were damaged. They knew they were injured. I don't think that they knew to the extent. They didn't know the dollar amount, the specific dollar amount. No different than here. Plaintiffs knew they were injured before, more than two years before they filed this accounting malpractice case. And does Dancor address the idea of continuous representation? Because here your clients continue to represent the plaintiffs before the IRS, pardon me, until the case was over. Is that what happened in Dancor or did Dancor address that? I don't think Dancor addressed that, Your Honor. I'm sure they didn't. But they make it clear that the mere fact that damages are not ascertainable does not postpone the triggering of the statute of limitations. And that's key here. Because federated and plaintiff's argument is not only does it have to be ascertainable, it has to be fully known, it has to be fully foreclosed. You have to have a determination by a tax court or a final settlement setting the amount. And it's completely irreconcilable with the language in Dancor. The Illinois Supreme Court in Gala has also addressed the issue as to when a cause of action accrues in terms of knowing your damages. And the Illinois Supreme Court clarified by saying that they had never suggested that a plaintiff has to know the full extent of their injuries before a statute of limitations is triggered. If that were the law, the Illinois Supreme Court said, that would circumvent the legislature's intent to promote the prompt resolution of claims. It was a personal injury case, wasn't it? It was. It's somewhat different than, again, I imagine that the person who had gotten injured by GM in that was not represented by GM sometime during the pendency of their suit. I cite the Gala case for the policy considerations, Your Honor. Most of the cases cited are not accounting cases. They're attorney malpractice cases. Right. And as an Illinois Supreme Court case, I think the policy considerations are paramount. And this is what we have here. We have a plaintiff, who's a represented plaintiff, by the way, has attorney, has counsel as of October of 2005, with the power of attorney to deal with the Internal Revenue Service on their behalf. They've got counsel. December of 2005, with counsel, they unanimously consent to the proposal offered by the IRS. That's knowledge. And that would have been with the cooperation and input received from your client. Would that be right? Yes. They would have turned, any attorney would turn to the accountant and say, is that right? They may have. They may have. But the test, the relevant inquiry, is what did the plaintiffs know and when did they know it? And so, it is your position that they had a right to sue, that they had to sue sometime within two years of the time when they were notified. At exactly what time? Dependency of the audit? So back two years from the time they get the letter? The note that the notification of IRS disagrees with what their records are? I think clearly, and I think it could have been before this, but I think clearly when they give the unanimous consent to the proposed adjustment by the IRS, they know that they're paying a penalty and additional taxes as a result of an alleged miscalculation on their income tax returns. They know that at that point. They can't give unanimous consent without knowing it. So I say at a minimum from December of 2005, the two-year statute of limitations began running, which would have expired in December of 2007. We've got the check written on May 12, 2006. The check was written for the alleged negligence committed by the defendants. Did you raise that issue in front of the trial court? They suggest you did not. That the argument of the May 12th check, since it was written on May 12th but not submitted until later, was it an argument raised in the trial court? It was not. It was not. But I think this Court can affirm this decision on any basis present in the record. The check is in the record. The check was attached to a response filed on behalf of plaintiffs. So that check is a matter of record for this particular issue. You said in your brief, well, how do you get around Baldwin? M.C. Baldwin, I don't think I need to get around it. I don't think that our position in this case is inconsistent with M.C. Baldwin. M.C. Baldwin is very fact specific. And, yes, it stands for the proposition that you have to suffer an injury in order to have a cause of action accrue. We're not saying you don't have to suffer an injury. We're saying they did suffer an injury. M.C. Baldwin came to, and as a matter of fact, the justice who wrote M.C. Baldwin was the same justice who wrote Dancor. And his decision there was based upon the fact that there was a question of fact as to whether plaintiffs had a restitution claim. Defendants said, you paid us for services we didn't perform. Therefore, you had a restitution claim against us. Defendants said, no, we performed the services that you paid us for. You don't owe us any money. You don't have a restitution claim. So the court found there was a question of fact. If there was no restitution claim, then there was no injury until their clients left them. So M.C. Baldwin is very limited to its facts. And it certainly doesn't stand for the proposition that no injury is sustained in a tax liability case until the tax court says you owe money or until there's a final settlement, because M.C. Baldwin didn't deal with a tax liability issue. Looking at Baldwin, the language, quoting from your page 21, and I greatly appreciate the forthrightness on all sides in this case. It's great to read these briefs. Quoting, thus Gala, and this is from M.C. Baldwin, thus Gala and Dancort generally stand for the proposition that existence of some injury starts the running of the limitations period on any claim. So involve and discuss Dancort and Gala. Right. And then at page 23, discussing the case to Lucy, it is plainly obvious prior to any adversary ruling against the plaintiff that he has been injured as a result of professional negligence. So injured. So all those cases, Baldwin, Baldwin interprets Gala and Dancort require an injury. Lucy requires an injury. What was the injury suffered by these people, let's say, in December? Okay. Well, in October they hired attorneys. And some people might say that that's an injury. And they certainly had to pay for those attorneys. In December, they unanimously consent to the proposed adjustment, which meant they'd have to pay taxes and interest. In May, they write a check. That's an injury. The relevant inquiry is not what does the IRS make of that check and when does it have significance for the IRS. The inquiry is what did plaintiffs know? They knew they were injured when they wrote that check on May 12, 2006. And to suggest otherwise just defies reality. But it's also going to be forfeited because we're not here to save people. We're just not, especially, frankly, accountants and lawyers. I know some people think we do. I don't think I've been accused of that, trying to save people. But going back, they raise a point about some out-of-state cases, Feddersen, et cetera. And in researching that area, there's about a dozen states that have adopted the idea that there has to be some injury, that there has to be some finality. And it varies to what date that finality would be in terms of where the IRS audit stands. Why shouldn't we adopt that? Frankly, to help not your client, obviously, but accountants in general of saying, and here's the bright line day of when you can be sued. Because prior to that, you shouldn't be sued. You have no injury, which is a good thing, I think, for accountants. They can still represent their clients before the IRS. And after that day, the clock is ticking against their clients, saying you're on notice. You must file within two years. Why shouldn't we follow the vast majority of states that say once the IRS is done, and not necessarily at the end of the tax court when the assessment is made and finalized and paid, that's the date you look at. Because that is not the law in Illinois, and that's not what the legislature has declared to be the law with respect to the running of the statute of limitations. And here, again, we have an unambiguous statute, and our law tells us that. Well, it mentions tax liability in the sense of the statute of repose, right? Exactly. Because people often in that area won't know what they owe until years later. Exactly. And the legislature protected people against just that eventuality. They could have protected people against this eventuality if they had chosen to. Although, I'll remind the court, these plaintiffs didn't need protection. They knew. In 2006, they chose to wait until 2008. They had many options available to them. They could have entered a tolling agreement. Never did. They didn't need a tolling agreement. They still had months and years to file their accounting malpractice action before they did. This was an election that they made. They were represented. This isn't an unknowing, unrepresented party whose cause of action escapes them because they don't know that they've been injured or that it was wrongfully caused. If we agree with you that the clients of accountants, should the clock start running, starts running during the audit process, once they are noticed that the IRS is auditing them, won't they always have to fire their accountants, hire somebody new, because the clock is running against them? Why on earth would they keep somebody on if they're going to file suit? Would they keep your client on if they had filed suit? Does that make any sense? Can you foresee a circumstance where if they had filed suit in December of 05 against your clients, that they should retain your clients for the continuation during the audit process? They didn't need to. It was over. I'm asking in the world. Can you imagine why that would be a good thing? Does it make any sense they would retain your client if they filed suit against you? I would imagine there might be circumstances where your particular accountants had a lot of specific information that could help you in your dispute with the IRS or hurt you. You're asking me if I can imagine circumstances, and I can't. And frankly, that's not the issue that's presented by this case. Well, I suggest it is, and since I think we're very much in the area of what does the statute mean and what's the upside and downside of things. That's what we do. We didn't go find this on a street corner. We're sitting here in our own office, and somebody files an appeal, and they're very unhappy, and that's why they're here. And so then we have to say not just what should occur here at a federated and RISIN, but to all accountants everywhere within the state of Illinois from this day forward, here's the law. And I suggest one of the things we should look at and consider is do we want to set a rule, that you are asking us to set, that the term starts running, the statute of limitations starts running during the audit process. As soon as a person is aware of the audit process and they may have to pay under the audit process, that two years running, you better sue your accountant, even though the audit process will continue in this case for many more months. I don't see it as a good thing. Well, I go back to the law in the state of Illinois that requires in an accounting malpractice case that plaintiffs only know that there's an act or omission that's been committed resulting in an injury. And there's no dispute here that all of those facts were present more than two years before this action was filed. Plaintiff's position here isn't supported by the law. They say there's no injury until a tax court tells us that we owe taxes. But they say that's when they were injured by. But that's an attorney malpractice case, as you pointed out, Justice Quinn. And that's significant because the law with respect to attorney malpractice is unique. There's no other setting where you have to have either a judgment against you or an adverse settlement to file your cause of action. That's unique to attorney malpractice. And that's why that's an important distinction. Bronstein doesn't talk about statute of limitations issues at all. It simply says your case isn't right because this is a legal malpractice action and there's been no judgment entered adversely to you. That's significant. That's apples and oranges. Nothing else is like attorney malpractice in the state of Illinois. And I think it's telling that they're relying on attorney malpractice cases in order to make their point here. There simply is no law that favors their position. Well, the only case that I suggest that favors yours is Dancort. Well. And where they filed suit in 1990 and then against the guys for stealing money that they weren't aware of through their incompetent accountants. And in three years they said, oh, by the way, let's sue our incompetent accountants. I agree with you. That's a lot different than I suggest than what we have here. Well, but the language of the statute of limitations favors my position and I think the language in Dancort favors our position. Dancort clearly said you don't have to ascertain your damages to trigger the statute of limitations. They're saying you have to have a full resolution by a tax court. That's inconsistent with the first district's. They're saying early on. Some states do say. Some states do. Tax court and appeals. Right. Which is bizarre. But not Illinois. Right. So when are you saying the clock starts running for the statute of limitations? I actually think there are several opportunities that it started to run. I think that December of 2005 is the big one when they unanimously consent. There's no dispute about that. There's no factual dispute at all here, which is nice. They unanimously consent to the fact that they are going to pay the proposed adjustments by the IRS. That's knowledge. That's knowledge of an injury and that's knowledge of an act or omission. So at a minimum I say it runs from December of 2005 and then we've got the check on May 12, 2006. Either of those would bar plaintiff's action here. And so to tie this in and answer this question, when is an accounting error established by the IRS? Actually as early as April of 2005 is when the IRS notified plaintiffs that their tax returns were being examined on the specific issue of passive investment income miscalculation. So they knew even earlier of a potential act or omission. Would it be established then or, once again, would it be established after when IRS sends you a letter saying that as a plaintiff we're now going to assess you and penalize you? No. Which is some day later. Right. That's not the test. The test is knowledge of an act or omission giving rise to an injury. It doesn't mean you have to have the IRS's premature on it, the IRS saying it was an act or omission. The test is when do you have sufficient information to put you on notice that you have to investigate your claim? That's the purpose behind the statute of limitations. The legislature wants to promote the prompt resolution of claims. They clearly have this. I'm sorry. So then if I take your position, then when Quinn says, for example, IRS sends you a notice and they're saying that you may be delinquent or something and then you go to your tax account, I think that's what people usually do, and you ask them to check this out and see if it had relevance. You're saying then that the clock starts to run when IRS sends you the first notice, not when IRS has the negotiations, and then they say there's a penalty in the assessment. We've made a final determination. I think that's absolutely possible. If you get a notification from the IRS that your tax return is being examined because of miscalculations by your accountant, you are on notice at a minimum of a possible act or omission. We have more than that here. We don't have notice of a possible act or omission. We have notice of an act or omission. We have notice of penalties, of taxation, of interest, all more than two years before they filed this accounting malpractice claim. Let me take a look at my notes here. At its base, if you accept plaintiff's argument in this case, then 13214A is meaningless. 13214A means nothing if you accept plaintiff's position in this case. It completely does away with knowledge of act or omission as the standard for triggering the statute of limitations. As you can imagine, Counsel, we hear the end of the world argument a lot. If you do this, the world will collapse. The streetcars will quit running. Let me end on this. Plaintiffs knew. They knew in December of 2005. They knew on May 12, 2006. There is no dispute of fact about that. They elected to wait until May of 2008 to file this accounting malpractice action, despite the fact that they were represented by Counsel, despite the fact that they knew the consequences of the alleged miscalculation committed by the defendants. They waited. The trial court got it right here in the motion to reconsider, and I would ask that this court affirm the trial court's order dismissing the case with prejudice. Thank you.  Thank you, Your Honors. In construing a substantially identical statute, our Supreme Court found that the activation of the statute of limitations, that which starts it running, is when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. That's in County of DuPage. County of DuPage construing the construction statute of limitations, which, like the accountancy statute of limitations, does not specifically refer to injury or damages. The courts, in dealing with the situation that is presented in this case, have found that it is necessary to read into the statute by implication that essential element. Otherwise, the statute of limitation is either grossly unfair or meaningless. Indeed, if you were to read the accountancy statute of limitations literally word by word, it would require a taxpayer to bring suit against his accountant the moment the tax return is filed, because the action Why would he be unnoticed that something was wrong? He signed it, right? So, I mean, your people signed it, so how are they to notice that this is an error? The statute read literally, and I'm certainly not urging this reading, but the statute does not provide, in its literal terms, that the taxpayer know that it is wrongful at the time. Yes, and no, it's negligent. And how would you know? If I'm signing my tax returns, which everybody does every year, if you have a tax preparer, how do I know that he's goofed up at the time I sign it? He's negligent in preparing it. Exactly right. And my point, Your Honor, is just that. That the statute must be read to include knowledge of negligence. It must be read. And they concede that. Why isn't it? Again, I think I made it pretty clear. I'm one of those guys. I don't mislead people. People say, you don't know how it's going to roll after oral. Well, with me, you tend to. So I like the out-of-state cases. But what is wrong with their argument that in December of 2005, when your clients unanimously agree they owe money, they have to settle, they do settle, they agree to the adjustment, I should say, in December of 2005? Why isn't the clock running then? How can you argue they're not on notice that they've been injured? They are on notice of something. They're informed of the circumstances. Well, then what is the something that their taxes were wrong, that they have to adjust, they have to pay a lot more money than they did, that there's been an error in their taxes. And they're agreeing with the IRS. That was wrong. The error in the taxes is evident from the outset that there's been some problem. The consequences of that problem are not yet clear. And it's our position, Your Honor, that in December. I can buy your argument is up to the time, certainly when they first file. When you get a letter, if I had a tax repair, I would go to them and say, what did you do to me? Explain this to me. And we would sit there looking at the IRS and try to explain the problem away. However, once the IRS says, okay, Mr. Quinn, we have to adjust your taxes for this year, do you agree? Yeah, I agree. I will pay you X number of dollars more. I agree that there has to be an adjustment made. How is it that I'm not known that there's been an error made when I agreed that there was an error made? Because it has not been made certain. Bronstein tells us that you do not have a claim as of that moment. But that is, again, Bronstein is an attorney malpractice, and thank God, otherwise we'd all be suing each other constantly. Again, we are the only profession where you have to actually have a judgment against you. You can't say, oh, I would have gotten a lot of money, or you actually have to have a judgment gone through before you can file a suit. It's something we lord over the doctors. But this isn't a cotton malpractice. Well, that's true. But the principle ought to be the same. The principle we maintain is the same. And if you look to the out-of-state cases, you see clearly articulated rationale why the principle is exactly the same. I cannot think of a principled reason why, in this context, accountant malpractice and attorney malpractice should be any different. Otherwise, you do have this question of when, the question that the Court has asked this morning, when does the statute begin to run? In a negotiation with the IRS, when has it been made sufficiently certain that you can say, you now have a claim? Well, they're suggesting in December of 2005 when your clients acknowledged that they have to adjust their taxes. And the acknowledgment was an acknowledgment of the likelihood. It was no greater an acknowledgment than the plaintiff in Bronstein. We know, we have a very good idea, or it's very probable where this is going. Litigants are often aware in litigation where the case is headed. You know sometimes before the jury goes out. You know sometimes in discovery where the case is going. But that doesn't mean that the matter has been resolved. You go into a negotiation with the IRS or any other adverse party, and you have a sense of what your client's liability may be or what the scope of a resolution might involve. But it doesn't happen. It's not a fact until it happens. Anything else? I would just say, just on the point of the check, which really it's a question of fact, but I think the facts are clear. The check was written again. The settlement was anticipated. It was not transmitted until May the 17th. There could not have been, as a matter of law, any finality with the IRS before May 17th when that check was delivered. And indeed, it really required yet a further step, which was the IRS's acceptance of this resolution. The question is knowledge. But, again, since that wasn't raised, your hope there, frankly, is forfeiture that the lawyers perhaps have an attorney malpractice case against their lawyers should they not win here for not raising that, what would appear on its face to be a pretty good issue. But it's not going to be that it's not fair. Your people got a check on May 12th. They're aware on May 12th what's going on. But, again, so I'd suggest it's been – never mind. I'm not arguing for some kind of equitable tolling of the statute of limitations, Your Honor. I want to be very clear about that. I'm saying that there was no claim to assert before May 17th at the earliest. And so thank you for your attention this morning. We appreciate it. Thank you for the fine brief, the excellent arguments. In this case, it will be taken under advisement, and this Court will be adjourned. Thank you. Thank you.